IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LESLIE WILLIS II, ) <br> ) <br> Claimant, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Respondant. ) | No. 13 CV 8971 <br><br> Jeffrey T. Gilbert <br> Magistrate Judge |

**MEMORANDUM OPINION AND ORDER**

Claimant Leslie Willis II ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6.]

This matter is before the Court on the parties' cross-motions for summary judgment. [ECF No. 11, 18.] For the reasons discussed below, the Commissioner's motion for summary judgment is denied, and Claimant's motion for summary judgment is granted. This matter is remanded to the Social Security Administration ("the Administration" or "SSA") for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25 of the Federal Rules of Civil Procedure, Carolyn W. Colvin automatically is substituted as the Defendant in the case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Claimant filed applications for DIB and SSI on May 19, 2011, alleging a disability onset date of December 3, 2009. (R. 155-167). A former road construction worker who was laid off in 2007, Claimant stands six feet three inches tall and weighed 435 pounds at the time of his hearing. He suffers from extreme obesity, asthma, chronic obstructive pulmonary disease ("COPD"), heart disease, hypertension, and depression. After receiving an initial denial of benefits and a denial on reconsideration (R. 71-74), Claimant timely filed a request for an administrative hearing. (R. 95-100). Claimant, represented by counsel, appeared and testified at a hearing held on September 17, 2012, before an Administrative Law Judge (the "ALJ"). Vocational expert Julie Bose also testified at the hearing. (R. 37-70).

On October 24, 2012, the ALJ issued a decision denying Claimant's applications for benefits based on a finding that he was not disabled under the Social Security Act. (R. 18-36). After noting that Claimant met the insured status requirement for DIB through December 31, 2010, the ALJ went through the five-step sequential evaluation process required by Social Security regulations. 20 C.F.R. 404.1520 and 416.902(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since his alleged onset date. (R. 23). At step two, the ALJ found that Claimant had the severe impairments of heart disease, hypertension, COPD, asthma, depression, and obesity. (R. 23). At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (R. 23).

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform a range of sedentary work with certain limitations: he could never climb

ladders ropes, or scaffolds and could only occasional climb ramps and stairs; he could only occasionally stoop, kneeling, crouch, and crawl; he was limited to occasional exposure to extreme heat, extreme cold, humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; and he was limited to occasional exposure to hazards such as moving machinery or unprotected heights. Moreover, he was limited to work involving simple instructions and simple routine tasks, with no more than occasional contact with the general public, coworkers, and supervisors. (R. 25). Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 29).

At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 30). Specifically, the ALJ found Claimant could work as an addresser, document preparer, and circuit board assembler. (R. 30). Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 31).

The Social Security Appeals Council subsequently denied Claimant's request for review (R. 1-4, 14-16), leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.

2003). Substantial evidence means relevant evidence that a reasonable person would accept as adequate to support an ALJ's conclusion. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Under this standard, a mere scintilla of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). In reviewing the Commissioner's decision, a court cannot reconsider the evidence or make independent credibility determinations. *Elder v. Astrue,* 529 F.3d at 413.

Even when there is adequate evidence in the record to support an ALJ's decision, the findings will not be upheld if the ALJ failed to build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). While an adjudicator is not required to address every piece of evidence in the record, her analysis must be thorough enough for the reviewing court to understand her reasoning. *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001). At a minimum, an ALJ must provide enough detail and clarity to allow meaningful appellate review. *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

### III. ANALYSIS

Claimant contends that several flaws in the ALJ's analysis mandate remand. First, he argues that the ALJ failed at step four to apprise the vocational expert (the "VE") of all of Claimant's impairments and limitations because she used a faulty RFC assessment to pose hypothetical questions to the VE. Second, Claimant asserts that the ALJ failed to adequately consider his obesity in combination with his other impairments to determine whether they together medically equal a listed impairment. Third, he finds error in the ALJ's failure to analyze his musculoskeletal impairments as severe impairments. Fourth, he points to flaws in the ALJ's credibility analysis. The Court agrees, for the reasons discussed below, that the ALJ

4

erred in questioning the VE at step four and in analyzing Claimant's obesity at step three, and that these errors require reversal and remand. The Court need not address Claimant's remaining arguments in support of reversal or remand.

### A. The ALJ's Questioning of the Vocational Expert Did Not Adequately Account for Claimant's Limitations in Concentration, Persistence or Pace.

Claimant argues that the ALJ erred by failing to incorporate several of Claimant's limitations into her assessment of his RFC and into her questioning of the VE at step five of her analysis. Cl.'s Mem. [ECF No. 12], at 13-14. Among the omissions that Claimant identifies are his "moderate limitations in maintaining concentration, persistence or pace." The Court agrees that this error warrants remand under the circumstances of this case.

An assessment of a claimant's RFC is a determination of the maximum level of activity that the claimant is capable of sustaining for eight hours a day, five days a week, or an equivalent schedule, despite his impairments. Social Security Ruling 96-8p. In formulating an RFC assessment, an adjudicator must "evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC assessment "is not an end in itself" but instead "a tool used in the determination whether [a claimant] can perform past relevant work or other work." *Milliken v. Astrue*, 397 F. App'x. 218, 222 (7th Cir. 2010). When relying on the testimony of a VE to determine what work a claimant can do, an ALJ must bring to the VE's attention all of a claimant's limitations supported by the medical record. *Varga v. Colvin*, 794 F.3d 809, 813, 813 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). The Seventh Circuit repeatedly has held this includes limitations in concentration, persistence, or pace. *Varga v. Colvin*, 794 F.3d 809 at 813; *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th

Cir. 2010); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009); *Kasarsky v. Barnhart,* 335 F.3d 539, 544 (7th Cir. 2003).

The Commissioner responds that, in this case, the RFC and VE hypothetical properly incorporated all of Claimant's restrictions as expressed by a doctor who "translated" all of his findings into an RFC assessment, as in *Johansen v. Barnhart,* 314 F.3d 283, 289 (7th Cir. 2002), Def.'s Memo. [ECF No. 19], at 12-13. In *Johansen,* the claimant's limitations in concentration, persistence, and pace stemmed from an underlying panic disorder. *Johansen,* 314 F.3d at 285. Therefore, the assessment that he "could still perform low-stress, repetitive work" was held to properly account for the conditions that would trigger his limitations. *Id.* at 289; *Yurt,* 758 F.3d at 858; *O'Connor-Spinney,* 627 F.3d at 619 ("We also let stand an ALJ's hypothetical omitting the terms 'concentration, persistence, and pace' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.")

However, in this case, it is not manifest that the ALJ's phrasing limits the VE's consideration to tasks possible for someone with all of the limitations that the ALJ identifies in her opinion. The ALJ made note of Claimant's moderate difficulties with "concentration, persistence, and pace" in her step three analysis, then later identified several of his specific work-related limitations, as listed by Dr. Biscardi, a state agency psychological consultant, on a Mental RFC Form. Claimant is moderately limited in his abilities "to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "to perform at a consistent pace without an unreasonable number and length of rest periods." (R. 406-407). After stating she gave "great weight" to the opinion of Dr. Biscardi, the ALJ incorporated into her RFC assessment only the narrative statement indicating that he could

6

"complete a normal workday," and "understand, remember, carry out, and sustain performance of" one to three step tasks. These assessments, though valuable in addressing some of Claimant's specific work-related limitations, do not explain or incorporate Dr. Biscardi's findings regarding pacing, schedule, and attendance.

Consequently, the ALJ's hypothetical questioning of the VE, which mirrored her RFC assessment, was inadequate. The mental restrictions in the VE hypothetical indicated only that Claimant was "limited to work involving simple instructions and simple, routine tasks" and "occasional contact with the general public, coworkers, and supervisors." Yet the Seventh Circuit repeatedly has rejected the notion that limiting a claimant to simple, routine tasks adequately addresses limitations in concentration, persistence, and pace. *Yurt*, 758 F.3d at 858-859. "The hypothetical must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544-545 (7th Cir. 2014); *Stewart v. Astrue*, 561 F.3d 679, 684-685 (7th Cir. 2009) (citations omitted). Tasks that are "simple" and "routine" may still outstrip the abilities of a person with limitations in scheduling and pacing tasks, particularly if those tasks must be performed on a sustained basis at an acceptable rate of production over the course of a work day. *See Webb v. Colvin*, No. 13 CV 4988, 2015 WL 9474289, at *4 (N.D. Ill. Dec. 28, 2015); *Kendzion v. Colvin*, No. 13 C 4820, 2014 WL 5448670, at *5-6 (N.D. Ill. Oct. 27, 2014); *compare Parson v. Comm'r of Soc. Sec.* No. 4:13-CV-04045-JEH, 2015 WL 3423595, at *6 (C.D. Ill. June 3, 2015) (hypothetical adequately addressed claimant's limitations in concentration, persistence, and pace by limiting individual to an environment with no "fast-faced production requirements" or "hourly production quotas").

For these reasons, remand is appropriate so that the ALJ can include all of Claimant's mental restrictions in the hypotheticals posed to the VE, and the VE then will have the opportunity to consider all of Claimant's mental limitations in responding to the ALJ's hypothetical questioning.

**B.    The ALJ Failed to Adequately Consider Claimant's Obesity in Combination With His Other Impairments in Determining Whether His Combined Impairments Equal a Listing.**

Claimant also asserts that the ALJ erred in failing to evaluate the effects of his obesity in determining whether his impairments, alone *or in combination,* meet or medically equal a listing. The Court agrees. There is no longer a separate listing for obesity in the regulations; instead, Social Security Ruling 02-1p explains how the Commissioner evaluates obesity in disability claims. When an individual claims obesity as an impairment, the ALJ must "consider the effects of obesity together with the underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000); *see Amlet v. Colvin*, 2014 WL 53256 (N.D. Ill. Jan. 17, 2014). The evaluation of obesity occurs at each step of the analysis. SSR 02-1p, Question 3. At step three, this evaluation is necessary because "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 01-2p, Question 7; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) ("Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments... adjudicators must consider any additional and cumulative effects of obesity."); *Gholston v. Astrue*, No. 11 CF 4671, 2012 WL 1463553, at *8 (N.D. Ill. Apr. 27, 2012) (requiring explicit discussion of a claimant's obesity at step three); *Smith v. Astrue*, No. 09 C 6210, 2015 WL 722539, at *12-*13

(N.D. Ill. Feb. 22, 2011) (requiring discussion of cumulative effects of disability in obese claimants).

At step three, the ALJ concluded that Claimant "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 23). She based this conclusion on an analysis of the evidence regarding Claimant's respiratory ailments, heart disease, hypertension, and depression. (R. 24). The ALJ's entire discussion of Claimant's obesity in this regard is limited to the following twelve words, plopped into a parenthetical in the listings analysis: "even with consideration given to the claimant's obesity in accordance with SSR 02-1p." (R. 24). Given the existing record, this lone phrase falls far short of the reasoned analysis required in order to show that the ALJ has "drawn an accurate and logical bridge" from the evidence to her conclusions. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Ulloa v. Barnhart*, No. 01 C 9229, 2003 WL 22388992, at *11-12 (N.D. Ill. Oct. 20, 2003) (inadequate obesity analysis failed to build an accurate and logical bridge, despite ALJ's statement that she had taken combined effects into account). In order for this Court to have a meaningful opportunity to review the ALJ's findings, she must show the reasoning on which those findings are based. *See Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir.) on reh'g 368 F.3d 691 (7th Cir. 2004) (finding error in an ALJ's omission of reasoning regarding obesity); *Smith v. Astrue*, 2015 WL 722539, at *12-13 (N.D. Ill Feb. 22, 2011) (same); *Johnson v. Colvin*, No. 2:14-CV-47-JEM, 2015 WL 1486803, at *6 (N.D. Ind. Mar. 31, 2015) (criticizing ALJ's use of "boilerplate language that quotes the SSA regulations on obesity but does not lay out any analysis in connection with any Plaintiff's actual impairments").

Though obesity evaluation may be subject to harmless error analysis, the Court is not convinced that the error is harmless in this case. *Prochaska v. Barnhart,* 454 F.3d 731, 736–37 (7th Cir. 2006). Respiratory ailments are among those which, when combined with the effects of obesity, are most likely to result in a listings-level impairment. SSR 02-1p, Question 7; *Goins v. Colvin,* 764 F.3d 677, 681 (7th Cir. 2014). Obesity can also compound the effects of mental disorders, as when sleep disturbances caused by obesity lead to impaired concentration during the day. SSR 02-1p, Question 2. In addition, mental and physical symptoms can combine to medically equal the severity of a listing. SSR 02-1p, Question 7.

Claimant weighs approximately 435 pounds and has a body mass index ("BMI") greater than 54, well over the BMI of 40 required to establish a finding of Level III, "extreme" obesity under the regulations. SSR 02-1p, Question 1. Consultant Dr. Francis Vincent, M.D. noted in a Physical Residual Functional Capacity Assessment that Claimant's "complaints can be accounted for principally by his morbid obesity." (R. 417). Claimant reports severe shortness of breath. (*See, e.g.,* R. 105, 203, 22, 227, 238, 256, 373). He has visited the ER several times and was hospitalized for shortness of breath, bronchitis, and asthma. (R. 297, 340-341, 361, 430). According to Dr. Vincent, Claimant's shortness of breath and breathing problems disturb his sleep and compromise "almost all" of his activities of daily living; his "severe degree of obesity" also results in "markedly decreased agility." (R. 417).

The ALJ found that Claimant's impairments did not meet or medically equal the listing for depression in part because the severity of his symptoms did not meet any of the "paragraph B" criteria of the listing, which include "marked restrictions in the activities of daily living." (R. 24). Despite the mandate to consider the impacts of Claimant's mental and physical disorders in combination, the ALJ did not explain how she evaluated Dr. Vincent's observation that "almost

10

all" of Claimant's activities of daily living were compromised by his obesity in her finding that Claimant had only "moderate" impairments in his activities of daily living. *See Byerly v. Colvin*, No. 1:12-CV-91-JEM, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) (remanding where analysis lacked "a meaningful discussion of equivalence that would allow this Court to determine whether she properly considered, for example, how Plaintiff's physical limitations might combine with her mental impairments such that the Paragraph B criteria are equaled or not"). It may well be that, even considered in combination with the effects of his obesity, Claimant's respiratory and affective disorders do not medically equal listings level in severity. However, if that is the case, the ALJ must explain so in her reasoning. By omitting any discussion of Claimant's obesity at the listing stage, the ALJ contravenes SSR 02-1p and fails to build the requisite logical bridge between the evidence and her conclusions. Therefore, remand is appropriate.

### C.  On Remand, the ALJ Also Should Clarify her Assessment of Claimant's Credibility as Appropriate.

This case merits remand given the above-discussed errors in the VE hypothetical and the listings analysis. However, on remand, the ALJ also should further clarify her reasoning with respect to her assessment of Claimant's credibility. The Court recognizes that credibility is for the ALJ to decide and will not reverse a credibility determination unless it is patently wrong. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). Still, the ALJ must "competently explain" any adverse credibility finding "with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Here, the ALJ first states that medical evidence does not support Claimant's allegations, based on a clear chest X-ray and a cardiac stress test, which was suspicious but "not diagnostic for ischemia." (R. 28). She does not explain which of Claimant's alleged symptoms this

11

evidence tends to undermine, or how. At the stress test, Claimant was able to walk on a treadmill for just two minutes and thirty-six seconds, demonstrating a "poor capacity for exercise." (R. 294). Claimant does not complain of ischemia (reduced blood flow to the heart). He complains of severe shortness of breath on even slight exertion. Without further clarification of the ALJ's reasoning, the test cited would seem to support, rather than undermine, that claim.

The ALJ also saw evidence of poor credibility in the facts that Claimant did not visit a cardiologist yet sought mental health treatment after claiming he could not afford such treatment. (R. 28). An ALJ "may deem an individual's statements less credible" if he is not seeking care for his symptoms or following prescribed treatments. *Murphy v. Colvin,* 759 F.3d 811 (7th Cir. 2014); SSR 96-7p. However, an "adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide," including the inability to afford treatment and lack of access to free or low-cost medical services. SSR 96-7p; *Shauger v. Astrue,* 675 F.3d 690, 696 (7th Cir. 2012). In some circumstances, it might be plausible to argue that a claimant's obtaining treatment undercuts earlier claims of lack of access. Alternately, that same fact could indicate that a claimant's "statements regarding the intensity, persistence and limiting effects" of his mental health problems are in fact true, or true enough that he sought treatment despite barriers. Here, Claimant has already been determined indigent enough to qualify for SSI; only his disability status is at issue.

This leads to the ALJ's final reason for discounting Claimant's credibility: the inconsistency between his testimony about seeing a cardiologist and the lack of any treatment record from a cardiology practice, other than the single cardiac stress test performed at the cardiology unit of the Provena St. Joseph Medical Center. (R. 294). His primary care provider

is a nurse practitioner at the St. Francis Health and Wellness Center, which charges a sliding fee; even so, he testified that he is unable to go there as often as necessary because he lacks health insurance. (R. 44-45). He stated that his lack of insurance also keeps him from seeing the cardiologist. (R. 52). His testimony that he "was seeing a cardiologist" is indeed inconsistent with the available medical record. (R. 52). As long as the case is being remanded for other reasons, however, the ALJ should explore the reason for the lack of treatment records, including the possibility that Claimant was referring to the stress test itself as a cardiology visit, or that earlier records existed that were not produced, before relying heavily on this single clear inconsistency as a basis for discounting Claimant's credibility regarding his symptoms of shortness of breath, mobility impairment, and fatigue.

Careful assessment of Claimant's credibility is required here because fully crediting his testimony could significantly alter his RFC analysis. For example, Claimant has stated that he lacks the agility to pick up an object from the floor, which would eliminate any jobs requiring even occasional stooping. (R. 56). He has stated that he experiences extreme shortness of breath throughout the day and upon any exertion, to the point that he spends more than half of the day lying down. (R. 54). He has reported using a nebulizer four times a day, with each treatment requiring about 30 minutes of his day. (R. 45-46, 64). His reported level of nebulizer use and fatigue would, according to the VE, eliminate all possibility of substantial employment. (R. 68). The ALJ need not believe all of this testimony, but if she does not, she must state why using evidence from the record.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 21, 2016